## ATTORNEY GENERAL *vs.* HUGH McOSKER.
## SAME *vs.* FRANK K. STEARNS.

Middlesex.    March 23, 24, 1908. — April 3, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Elections,* Party denomination, "Two leading political parties." *Words,* "Two leading political parties."

The State convention of the democratic party, held in the autumn of 1907 for the purpose of placing in nomination candidates for State officers to be voted for at the next annual election, divided into two factions, one of which nominated one B. for governor, while the other nominated one W.   Each faction claimed the party designation, and, under St. 1907, c. 560, §§ 171, 175, 176, filed with the Secretary of the Commonwealth a ticket designated "democratic," and, each objecting to the ticket filed by the other, the dispute was referred under § 179 of that statute to the State ballot law commission.   It becoming apparent that the decision of the commission would be so delayed that, after its rendition, the defeated faction would be unable to file nomination papers under § 177, both factions filed such papers, each placing in nomination the persons upon the ticket nominated by its convention.   The nomination paper containing W. as a candidate for governor was designated "democratic citizens." After the time within which nomination papers must be filed under § 177 and the time within which they might be withdrawn under § 180, the commission decided that the ticket headed by W. as a candidate for governor was entitled to the designation "democratic."   On the ballot at the State election, W. therefore appeared as a candidate for governor under the designations "democratic" and "democratic citizens, nomination paper."   At that election, a candidate designated "republican" received the highest number of votes, and a candidate designated "independence league" received more votes than were cast for W. under the designation "democratic," but less than the total number cast for W. under both the designations "democratic" and "democratic citizens."   A member of the party designated "democratic," as representative of one of the two leading political parties, was appointed a member of the board of registrars of voters of a city under § 27 of the statute mentioned above, which provides that such members shall be so appointed that they shall represent, as equally as may be, the "two leading political parties," and an information by the Attorney General, at the relation of members of the party designated "independence league," in the nature of a quo warranto, was filed to try the title of the appointee to his office.   *Held,* that under the circumstances the votes cast for W. under the designation "democratic citizens, nomination paper," were votes belonging to the party designated "democratic," and therefore that the respondent was entitled to his office, since he was a member of the "democratic" party, which was one of the "two leading political parties" under § 1 of the statute.

Two INFORMATIONS, filed on January 24, 1908, in the Supreme Judicial Court for the county of Middlesex, by the

Attorney General at the relation of two citizens and legal voters of Lowell, members of a political party known and designated as the independence league, to try the title of the defendants respectively to the office of a member of the board of registrars and to the office of a member of the board of police of that city.

There was a hearing before *Morton*, J., who reserved the cases for the consideration of the full court.

The facts are stated in the opinion.

*H. Parker*, (*J. T. Auerbach & R. Walcott* with him,) for the Attorney General.

*J. G. Hill*, for the defendants.

KNOWLTON, C. J.    These are two informations in the nature of a quo warranto, to try the title of Hugh C. McOsker to the office of a member of the board of registrars of voters of the city of Lowell, and the title of Frank K. Stearns to the office of a member of the board of police of that city.   Each of the statutes under which the appointments of the defendants were made, respectively, requires that the members of the board shall, as equally as may be, represent the two leading political parties at the preceding State election.   R. L. c. 100, § 3.   St. 1907, c. 560, § 27.   In making these appointments the mayor decided that the democratic party is one of the two leading political parties, determined by the result of the State election in 1907. There is no dispute that the republican party is one of them. But the informant contends that the independence league and not the democratic party, is the other.

In framing these statutes the Legislature undoubtedly meant by the two leading political parties, the two leading parties in point of numbers.   As a convenient way of determining numerical superiority they made this enactment: "'Two leading political parties,' shall apply to the political parties which cast the highest and next highest number of votes for governor at the preceding annual election."   St. 1907, c. 560, § 1.

It is agreed that at the State election in November, 1907, the following persons received the following number of votes for the office of governor, with the designations set against their names:

| | | |
|---|---:|---|
| Curtis Guild, Jr. of Boston (Republican) | 188,068 | votes |
| Thomas L. Hisgen of West Springfield (Independence League) | 75,489 | " |
| Henry M. Whitney of Brookline (Democratic) | 70,842 | " |
| Henry M. Whitney of Brookline (Democratic Citizens) (Nom. Paper) | 6,691 | " |
| Henry M. Whitney of Brookline (Independent Citizen) | 5,154 | " |
| Henry M. Whitney (No designation) | 1,692 | " |
| Charles W. Bartlett of Newton (Anti-merger) | 11,194 | " |
| John W. Brown of Worcester (Socialist) | 7,621 | " |
| Hervey S. Cowell of Ashburnham (Prohibition) | 3,810 | " |
| Thomas F. Brennan of Salem (Socialist labor) | 2,999 | " |
| All others | 135 | " |

It appears that Mr. Hisgen, the candidate of the independence league, received a larger number of votes than Mr. Whitney received under the party designation " democratic," and that Mr. Whitney, under different designations, received a larger number than Mr. Hisgen.

In view of these returns and the other facts, and the provisions of the statute, we are to determine which of the parties represented by these two candidates is one of the two leading political parties. It is agreed as a fact, if it is competent and material, which the informant denies, that the independence league has never, in this Commonwealth, elected a candidate nominated by it for an office to be filled by vote of all the voters of the Commonwealth; nor has any candidate nominated by it been elected to the General Court. It is also agreed that in the city of Lowell there are not more than thirty voters enrolled under the provisions of the caucus act, as members of the independence league, while there are two hundred and sixteen principal election officers and the same number of deputies for each election in said city. While such facts as how many voters are enrolled in the membership of either of these parties in a particular city may not be material, we are of opinion that in the consideration of this statute in reference to peculiar conditions not provided for in it, we may take into account facts of common knowledge in regard to the political parties of the State,

and inquire which of two possible constructions of the statute would be the more likely to reach the result intended by the Legislature.

It is agreed that in 1907 there was a sharp contest in the democratic party for the nomination of governor. The party included two contending factions which divided in the State convention, organized separately and chose two sets of candidates for officers of the State. Each organization professed to represent the democratic party, and filed a list of its candidates with the Secretary of the Commonwealth, and demanded a place for them on the official ballot as candidates of the democratic party. Each faction objected to the certificate of nominations of the other, and the matter in dispute was referred to the ballot law commission, under the St. 1907, c. 560. It being apparent that the hearing would occupy considerable time and that the result was uncertain, a nomination paper was filed with the Secretary of the Commonwealth on October 14, 1907, putting in nomination as State officers, under the designation "democratic citizens," Mr. Whitney and others, who were the same persons that were nominated by his supporters at the State convention, except one who had withdrawn his name from nomination. On the same day nomination papers were filed for the officers of the other faction of the democratic party, and another nomination paper was filed for Mr. Whitney for the office of governor, under the designation "independent citizen." October 14 was the last day for filing nomination papers under the law, and October 17 was the last day for withdrawing names from nomination. The ballot law commission were unable to reach a decision of the questions before them until October 18, when they filed their decree that the certificate containing the name of Mr. Whitney represented the action of the democratic party, and that the names on it should go upon the official ballot as the candidates of that party. It was then too late to withdraw the nominations made by the nomination papers.

The question of law is presented, whether under facts like these, in determining the highest number of votes for governor cast by a political party at the State election, the number cast under the designation of that party on the ballot shall be conclusive of the whole subject, so as to exclude all consider-

ation of other facts or evidence. We are of opinion that the rule contended for by the informant is too strict in this particular. The inference is very strong that the persons who filed the nomination paper containing the name of Mr. Whitney and his associates as they afterward appeared on the official ballot, except one who had withdrawn his name from nomination, were members and supporters of that part of the democratic party whose nominations were accepted by the ballot commissioners. This paper was filed in the interest of that part of the party. The political opinion or preference indicated by the designation selected was no other than democratic. By reason of the use of the word "democratic," followed by "citizens," it was necessary to add the words, "nomination papers." St. 1907, c. 560, § 230. The requirement of this section, that when the name of a political party is used in connection with some other term as the designation of a candidate nominated by a nomination paper, the words "nomination paper" shall be added to such political designation, is for the purpose of showing which candidates, belonging to the party, are regularly nominated and which are nominated by individuals. It recognizes the affiliation of both with the party, and implies that when the same person is the nominee in both forms, all the votes cast for him may be treated as belonging to the same party.

This designation was not the name of any other existing political party as defined in the St. 1907, c. 560, § 1. There was, therefore, no occasion to decline to count the voters as belonging to the democratic party, on the ground that they represented another party whose rights were to be protected. If hereafter there should be a use of the same designation, with a view on the part of anybody to acquire a position as a political party, future conditions may be considered and different questions may arise. But we are of opinion that a designation adopted as this was, for the purpose which is manifest, does not preclude the court from finding that the voters under it should be counted as belonging to the democratic party. There seems little doubt that this nomination was as truly democratic as that of the convention. The votes to the number of sixty-eight hundred and forty-six which were cast for Mr. Whitney under the designation "independent citizen," and under no

designation, may fairly represent his supporters who were not of his party.

The votes cast for him under the designation " democratic " and " democratic citizen," are together more in number than those cast for the candidate of the independence league, and it follows that, within the meaning of this statute, the democratic party is one of the two leading political parties in the Commonwealth.

The other questions discussed before us need not be considered.

*Informations dismissed.*