COMMONWEALTH vs. LAWRENCE LUCAS
(and two companion cases against the same defendant).

Middlesex. February 7, 1955. — May 17, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Evidence*, Admissions and confessions, Offer of proof, Discretion of trial
judge. *Practice, Criminal*, Mistrial; Exceptions: whether error
harmful, whether error shown. *Error*, Whether error harmful, Whether
error shown.

Evidence of statements which were made in the presence of the defendant
in a criminal case at a time when he was not under arrest and were
not then unequivocally denied by him was competent to show an
admission by him. [597–598]
The defendant in a criminal case was not harmed by denial of a motion
to strike out certain testimony which the judge subsequently ordered
to be struck out and disregarded by the jury. [598]
On the record of the trial of an indictment where the judge ordered cer-
tain testimony adverse to the defendant to be struck out and dis-
regarded, there was no error in the denial of a motion by him for a
mistrial based on the ground that such testimony was so inflammatory
and harmful to him that it could not be cured merely by the order
of the judge. [599]
Error in the exclusion of questions asked on direct examination of the
defendant or of a witness called by him at a criminal trial was not
shown where there was no offer of proof. [599–600]
Testimony as to remarks made concerning the defendant in a criminal
case by a witness therein some thirteen years previously, offered by
the defendant to show bias and prejudice affecting the credibility of
the witness, might properly be excluded in the discretion of the judge.
[600]

THREE INDICTMENTS, found and returned on February 2,
1954.

The cases were tried before *Paquet, J.*

*George A. McDonough*, for the defendant.

*Allen Gerson*, Assistant District Attorney, for the Com-
monwealth.

COUNIHAN, J. In February, 1954, the grand jury for the
county of Middlesex returned three indictments against the

defendant, the first charging that on January 8, 1954, at Cambridge, the defendant did assault Jacqueline Lucas, a female child under the age of sixteen years, with intent unlawfully and carnally to know and abuse her; the second that the defendant at the same time and place did commit an indecent assault and battery upon Jacqueline Lucas, a child under the age of fourteen years; and the third that the defendant at the same time and place was guilty of open and gross lewdness and lascivious behavior in the presence of Jacqueline Lucas. The defendant pleaded not guilty and was put to trial before a judge and jury upon all three indictments together. By order of the judge the trial was made subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, which were in effect at the time of trial.[1] The judge denied motions of the defendant that upon all the evidence a verdict of not guilty be directed on each indictment. The jury returned verdicts of guilty on all the indictments and concurrent sentences to the State prison were imposed. The defendant appealed and duly filed nineteen assignments of error as to all the indictments. Those numbered 7, 8, 9, and 10 were not argued and are treated as waived. *Commonwealth* v. *Taylor*, 327 Mass. 641, 646. We have before us a transcript of the testimony at the trial.

The jury could have found these facts. One Dominic Raymond, a brother of the wife of the defendant, lived in the home of the defendant on the second floor of a house in Cambridge. The other members of this household were the defendant, his wife, Theresa, and four children whose ages ran from about two to about twelve at the time of the alleged crimes. Jacqueline was the oldest child. Theresa worked nights in a hospital, and on the evening of the day before these events occurred she left her home about ten fifteen o'clock in the evening. She usually returned at seven o'clock in the morning. After being away for a few days Raymond returned home unexpectedly about ten minutes after twelve on the morning of January 8, 1954. As he

---

[1] See now St. 1954, c. 187, § 1.

walked upstairs he heard the television sounding loudly. He opened the door and went into the room where the television was. He saw the defendant and Jacqueline lying on a couch in a compromising position. Raymond pulled the defendant off the couch and violently assaulted him. He then left the house and called the police. Shortly afterward two police officers arrived and, with Raymond, they entered the house. The defendant was then in the kitchen clad only in shorts and the officers made him put on his trousers. There was some talk between the defendant, Raymond, and the police officers. In their presence Raymond told the story substantially as related above. The defendant expressed a vile epithet, pointing a finger at Raymond. Later they all went into the parlor where Jacqueline was. In the presence of the defendant the police officers asked Jacqueline what had happened. She answered that she had been doing her home work in one room and that her father was in another room listening to television. She wanted to see the picture then on television so she went into the parlor. She sat on one chair and her father on another. Soon her father moved from his chair to the couch and called her over. She stood beside him and he reached around and took hold of a zipper that was on the side of her slacks. He unzipped it and took off her slacks. The rest of her story was so sordid and offensive to common propriety that it would serve no useful purpose to repeat it. Her uncle came in and pulled her father off the couch and assaulted him. In reply the defendant said, "That's not so. I was sitting on the couch in my shorts and I just had my daughter — she was laying over and I was laying on top of her — aside of her, and any man can love his daughter up if he wants to." Thereafter they all went to a hospital. There in the presence of the defendant, the police officers, and a police woman, Jacqueline repeated in substance the story she had told the police officers in the presence of the defendant at her home. The defendant said nothing. After that the defendant was placed under arrest and taken to a police station. There Jacqueline in the presence of the de-

fendant and others repeated the same story of what had occurred. The defendant at that time said, "That's a lie," but when asked by a police sergeant if he meant that his daughter had lied he said, "My daughter is not a liar."

This testimony relative to what was said at the police station went in on a Friday afternoon, and when the trial was resumed on the following Monday the Commonwealth rested. Thereupon the judge told the jury that there was evidence on Friday of certain statements made in the presence of the defendant at the police station when he was under arrest. He told the jury that the defendant in these circumstances was not bound to make reply. He charged the jury then to strike from their minds and to disregard entirely any statements or talk at the police station.

The first assignment of error relates to the denial by the judge of a motion to strike out "the entire statement" of one of the police officers about statements made in the presence of the defendant at his home. This testimony was admissible to show an admission by the defendant. "When a statement is made in the presence and hearing of a defendant which, if true, tends to show that he is guilty, and he remains silent or makes an equivocal reply, the rule of law has been stated to be as follows: 'The rule is that a statement made in the presence of a defendant, to which no reply is made, is not admissible against him, unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply unless he intends to admit it. But if he makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence.' *Commonwealth* v. *Brown*, 121 Mass. 69, 80." *Commonwealth* v. *Trefethen*, 157 Mass. 180, 197–198. In the recent case of *Commonwealth* v. *Aronson*, 330 Mass. 453, at page 459, we said, "The judge ruled that the defendant was not then under arrest. It is true that police officers would not have permitted the defendant to go away, but they did nothing to show their intention to hold him. . . . [See cases cited.] Ultimately

the judge left it to the jury to determine whether the defendant was then under arrest. In this there was no error. Following this conversation and as a part of it there was testimony that an officer asked the defendant whether he had heard the statements made . . . . The defendant answered that he had, but that they were 'all confused.' He was then asked whether their statements were true. He answered that he was not 'going to say anything until he saw a lawyer.' That was admissible. There is nothing in the defendant's contention that a failure on his part to reply to an incriminating accusation would not be admissible if he had previously determined to make no reply."

Assignment of error numbered 2 was based upon an exception taken to the denial by the judge of a motion to strike out what a police officer testified to regarding statements made in the presence of the defendant by his daughter at the police station. All testimony as to what was said by anyone at the police station was struck out by the judge later and he ordered the jury to disregard it. However, it seems appropriate to note that such evidence was admissible and need not have been struck out. "When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible." *Commonwealth* v. *Madeiros*, 255 Mass. 304, 313. *Commonwealth* v. *Grieco*, 323 Mass. 639, 641. *Commonwealth* v. *Vaughn*, 329 Mass. 333, 336–337. The rule has been frequently stated that when a defendant who is under arrest remains silent or makes an unequivocal denial such evidence is inadmissible. See *Commonwealth* v. *Twombly*, 319 Mass. 464, 465; *Commonwealth* v. *Ellis*, 319 Mass. 627, 630. "The evidence under consideration . . . does not contain the elements of which the rule is composed." *Commonwealth* v. *Sheppard*, 313 Mass. 590, 601. It was for the jury to determine under proper instructions whether the rule in *Commonwealth* v. *Madeiros*, *supra*, applies.

Assignments of error numbered 3, 4, and 5 were based upon exceptions taken to the denial of a motion to strike out the testimony of another police officer relative to statements made at the home of the defendant and at the hospital. What we have said regarding assignment of error numbered 1 applies to these assignments of error.

The same reasoning applies to assignment of error numbered 6 which was based on an exception to the denial by the judge of a motion to strike out the testimony of the police woman relative to statements made in the presence of the defendant at the hospital. In any event such evidence was merely cumulative. *Commonwealth* v. *Capalbo*, 308 Mass. 376, 383.

Assignment of error numbered 11 is based upon an exception to the denial of a motion for a mistrial on the ground that the statements made in the presence of the defendant at the police station were so inflammatory, prejudicial, and harmful to the defendant that they could not be cured by the bald instruction to the jury to disregard them. "There is nothing to indicate that their admission inflamed the jury or prejudiced the defendant in any way." *Commonwealth* v. *Jones*, 319 Mass. 228, 229. *Commonwealth* v. *Sheppard*, 313 Mass. 590, 599. *Commonwealth* v. *Gray*, 314 Mass. 96, 98, and cases cited. (All these cases concerned photographs alleged to be inflammatory.)

Assignments of error numbered 12, 13, and 14 are based upon exceptions of the defendant to the exclusion of three questions put to him on direct examination. They referred to arguments between the defendant and Raymond and to threats made by Raymond against the defendant and his wife. The "defendant . . . made no offer of proof upon . . . [their] exclusion by the judge. It, therefore, does not appear what the expected evidence was." *Commonwealth* v. *Farrell*, 322 Mass. 606, 623. *Commonwealth* v. *Granito*, 326 Mass. 494, 497.

Assignments of error numbered 15, 16, and 17 are based upon exceptions to the exclusion of questions put to one of the witnesses called by the defendant on direct examina-

Commonwealth *v.* Lucas.

tion, which related to the reputation of the defendant in the community. What we have just said regarding assignments of error numbered 12, 13, and 14 relative to absence of an offer of proof applies with equal force to these assignments of error numbered 15, 16, and 17. In addition the record does not show that the witness had sufficient knowledge to testify on this matter. See *Commonwealth* v. *Boris*, 317 Mass. 309, 318.

Assignment of error numbered 18 is based upon an exception to the exclusion of a question put to one of the witnesses for the defendant on direct examination relative to remarks by Raymond concerning the defendant in 1941.[1] "In the determination of whether such evidence is too remote, confusing or prejudicial, much must be left to the discretion of the trial judge." See *Commonwealth* v. *Cohan*, 307 Mass. 179, 183.

Assignment of error numbered 19 is based upon an exception to the denial by the judge of the motions of the defendant for a directed verdict of not guilty on each indictment. In the light of what we have said regarding the facts which the jury could warrantably find and other credible evidence which we find not necessary to repeat, together with reasonable inferences therefrom, there was ample evidence to warrant a verdict of guilty on each indictment.

The cases were fully and fairly tried and the instructions given to the jury in the judge's charge, which we need not recite, adequately covered all phases of the evidence before the jury so that the rights of the defendant were competently protected.

There was no error and the entry in each case must be

*Judgment affirmed.*

---

[1] In assigning error, the defendant stated his contention that the exclusion "was erroneous in that the defendant was entitled to give testimony indicating bias and prejudices which would affect the credibility of the witness Dominic Raymond." — REPORTER.